UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL AARON FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-0931-KJN<br><br><br><br>ORDER |

Plaintiff Daniel Aaron Freeman seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the Commissioner's final decision that the plaintiff has not been under a disability since May 4, 2011, is based upon legal error and is not supported by substantial evidence. (See ECF No. 12.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 13.) Thereafter, plaintiff filed a reply brief. (ECF No. 14.)

After carefully considering the record and the parties' briefing, the court DENIES

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on March 15, 1961.[2] (Administrative Transcript ("AT") 143.) He completed high school and at least one year of college.[3] (AT 34, 162.) Plaintiff was last employed by Home Depot, where he worked until he was injured in November 2008, when a shower enclosure that he was attempting to retrieve pinned him against the railing of a mechanical lift. (AT 35–36.) On May 4, 2011, plaintiff applied for SSI, alleging that his disability began on November 28, 2008. (AT 32.) Plaintiff claimed that he was disabled due to a low back disk bulge and a broken bone in his back; severe low back injury; depression; inability to sit, stand, or walk for more than 10 minutes; back spasms; and numbness in his buttocks and leg to knee. (AT 75, 161.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on May 14, 2014. (AT 30–58.) The ALJ subsequently issued a decision dated July 25, 2014, determining that plaintiff had not been under a disability as defined in the Act, since May 4, 2011, the date the application was filed, through the date of the ALJ's decision. (AT 15–25.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 5, 2016. (AT 1–4.) Plaintiff subsequently filed this action on May 2, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] There is some inconsistency in the record regarding how many years of college plaintiff completed. (See AT 34, 162.) Plaintiff maintains the inconsistency is due to a transcription error, and that the hearing transcript should read "went to college for a year" not "went to college four years." (ECF No. 14 at 2.) At any rate, this inconsistency is inconsequential.

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Shin; (2) whether the ALJ improperly discounted plaintiff's credibility; (3) whether the ALJ's Residual Functional Capacity ("RFC") determination was without substantial evidentiary support; (4) whether the ALJ committed reversible legal error at step five; and (5) whether this case should be remanded for an award of benefits.[4]

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

    A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[5] At step one, the ALJ determined that plaintiff has not engaged in

---

[4] Plaintiff's opening brief raises the issues in a somewhat different order.

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

substantial gainful activity since May 4, 2011, the date of his application. (AT 17.) At step two, the ALJ found that plaintiff has the following severe impairments: lumbar degenerative disc disease with radiculopathy, depression, obesity, and bilateral shoulder osteoarthritis. (Id.) However, at step three, the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AT 18.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff:

> Can lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit and stand and/or walk six hours out of eight hours. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead bilaterally. He needs a cane for long distance ambulation and walking on uneven terrain. He is limited to simple, repetitive tasks.

(AT 19.) At step four the ALJ determined that the plaintiff is unable to perform any past relevant work. (AT 23.) However, at step five the ALJ found that, in light of plaintiff's age, education,

---

42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (AT 24.)

Thus, the ALJ concluded that the plaintiff "has not been under a disability, as defined in the Social Security Act, since May 4, 2011, the date the application was filed." (AT 25.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Shin*

Plaintiff argues that the ALJ rejected the opinion of Dr. Shin without providing specific and legitimate reasons, based on substantial evidence in the record. (ECF No. 12 at 17.) The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

5

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, Carl Shin, MD is one of plaintiff's treating physicians who provided a contradicted opinion, regarding plaintiff's capacity to work. (AT 22, 1220.) Therefore, the ALJ was required to provide specific and legitimate reasons for rejecting it. See Lester, 81 F.3d at 830. As a preliminary matter, the ALJ did not completely discount Dr. Shin's opinion. Rather, the ALJ gave "limited weight to the medical source statement by Dr. Shin" for specific reasons. (AT 22.)

First, the ALJ noted that Dr. Shin's treatment was quite brief, because he only saw the patient four times before filling out the medical source statement. (Id.) This conclusion is supported by plaintiff's hearing testimony. (See AT 43.) Furthermore, Dr. Shin did not begin seeing plaintiff until November 2013, while plaintiff applied for disability on May 4, 2011. (AT 32, 43.) Logically, the ALJ concluded that Dr. Shin is "unable to comment on the time period prior to November 2013." (AT 22.) Accordingly, this was a legitimate reason to give limited weight to Dr. Shin's report when the ALJ was determining whether plaintiff was under a disability since May 4, 2011.

Second, the ALJ determined that the objective medical records do not support the limitations asserted by Dr. Shin. (AT 22.) Specifically, the ALJ observed that "a lumbar spine MRI in November 2013, the time when Dr. Shin began treating [plaintiff], showed only mild findings." (Id.) The ALJ's conclusions are supported by substantial evidence in the record. Foremost, it should be noted that Dr. Shin's medical assessment is a conclusory three-page preprinted form that was submitted without any supporting treatment records from Dr. Shin. (See AT 1220–22.) Moreover, contrary to plaintiff's contentions, the imaging studies in the record support the ALJ's conclusion that there were only mild findings as to plaintiff's lumbar spine.

---

and (6) specialization. 20 C.F.R. § 404.1527.

1       Plaintiff asserts that the ALJ committed legal error when she concluded that the MRIs

2 demonstrated only mild findings because she failed to recognize that the term "spondylolysis"

3 means a vertebral fracture. (ECF No. 12 at 18.) Dating back to February 12, 2009, the MRIs

4 have demonstrated spondylolysis on plaintiff's left L5 vertebra. (See AT 353–54, 648–49, 795–

5 96, 828–29, 853–54, 1244–45.) However, at the same time, these MRIs have been interpreted as

6 mild and essentially normal by more than one physician. According to Gail M. Schlesinger, MD,

7 plaintiff's September 15, 2010 MRI showed normal alignment of the lumbar spine; normal height

8 and signal intensity of the vertebral bodies; left L5 spondylolysis without spondylolisthesis;

9 normal appearance for the remainder of the posterior elements; normal spinal cord and canal

10 findings; and mild desiccation without narrowing at L3-L4, L4-L5, and L5-S1. (AT 353–54.)

11 Importantly, Dr. Schlesinger opined that "[c]ompared with the prior MRI of the lumbar spine

12 dated 11/9/09, there has been no significant interval change." (AT 354.)

13       Subsequently, on May 30, 2012, plaintiff's treating physician Michael Amster, MD also

14 reviewed plaintiff's September 15, 2010 MRI and opined that it was "essentially normal." (AT

15 1008 (emphasis added).) Then, on November 22, 2013, plaintiff had another MRI of his lumbar

16 spine. (AT 1244–45.) Brian Sakamoto, MD compared this MRI to plaintiff's November 9, 2009

17 MRI and found:

> 1. Small multilevel bulging discs of the lower lumbar spine, overall mildly worsened since 2009,
> 2. Mild bilateral L3-4 and mild left L-5-S1 neural foraminal narrowings.
> 3. Left L5 pars defect, no significant change. No new vertebral body subluxations developed.
> 4. Scattered joint facet arthropathy, overall mildly worsened since 2009.

23 (AT 1245.) Taken together, these records support a finding that since November 9, 2009,

24 plaintiff has had mild findings on his lumbar spine MRIs, which have gotten mildly worse. While

25 plaintiff asserts that the ALJ did not give enough attention given to his spondylolysis, substantial

26 evidence supports the ALJ's interpretation of plaintiff's MRIs because her interpretation is based

27 upon objective evidence in the record.

28       Therefore, the court finds that the ALJ provided specific and legitimate reasons for

discounting Dr. Shin's opinion.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff alleges that the ALJ did not provide adequate reasons for rejecting plaintiff's testimony. (ECF No. 12 at 19.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035–36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the

8

court "may not engage in second-guessing." Id. at 959.

As an initial matter, the ALJ found evidence of malingering by plaintiff, which suggests that she did not need to provide clear and convincing reasons for discounting plaintiff's subjective complaints. See Lingenfelter, 504 F.3d at 1035–36. The ALJ specifically pointed to the fact that during an October 2011 examination, Robert Miller, MD observed that plaintiff demonstrated "pain out of proportion to the examination" and "was also found to be exaggerating his symptoms with positive testing for exaggerating and symptom magnification." (AT 21–22, 1040.) Plaintiff contends that this is not sufficient evidence of malingering to discount his credibility, because it is ambiguous. (ECF No. 12 at 20.) Even assuming that there is not sufficient evidence of malingering, the ALJ's decision still meets the Lingenfelter standard because the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's subject complaints.

The ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plainitiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because his statements conflict with the objective medical evidence; he has received conservative treatment; and his condition can be controlled with medication. (AT 20–21.)

Importantly, however, the ALJ did not entirely discredit plaintiff's allegations of chronic back and shoulder pain. Indeed, the ALJ limited plaintiff to "simple, light work with occasional postural and overhead reaching." (AT 21.) The ALJ also acknowledged plaintiff's "need to use a cane for uneven terrain and long distances to account for [his] obesity, chronic back pain with problems with gait requiring the use of a cane, and his depression and anxiety." (Id.)

i. Objective Medical Evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ determined that the objective medical evidence did not corroborate the alleged severity of plaintiff's pain. She specifically pointed out that "the record shows mild MRI findings, and also reveals that pain medication and branch blocks were helpful in alleviating his pain." (AT 20.) These conclusions are supported by substantial evidence. As explained above, the record supports the conclusion that the MRIs revealed mild lumbar spine findings. Additionally, the record demonstrates that plaintiff received relief from lumbar medial branch diagnostic blocking, as well as his pain medication. Dr. Amster noted that plaintiff reported receiving such relief in 2011 through 2013. (See AT 1000, 1007, 1015, 1019.) Furthermore, plaintiff reported the effectiveness of his pain medication to his pain management providers from June through December 2013. (See AT 1145, 1238, 1250.)

        ii.        Conservative Treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ concluded that "the overall record shows that [plaintiff] has not generally received the type of medical treatment that one would expect for a disabled individual." (AT 21.) The ALJ specifically noted that plaintiff was not a surgical candidate. (Id.) This conclusion is supported by the record. On November 18, 2009, after reviewing plaintiff's November 9, 2009 MRI, treating physician Abid Qureshi, MD informed plaintiff that he did not think surgery would help him. (AT 681.) In his April 26, 2011 report, Qualified Medical Examiner Ronald Wolfson, MD opined that he did not envision surgery for plaintiff, but rather continued pain management. (AT 1104.) Then, on December 17, 2012, after examining plaintiff and reviewing his file, orthopedic surgeon Charles Sonu, MD explained:

> I discussed the findings with the patient. He has spondylolysis at L5 without instability. He does not have evidence of nerve compression in his lumbar spine. I cannot improve his situation

> with surgery. I recommend that he return to Dr. Amster for continued care. He may benefit from facet rhizotomies [injections] since facet blocks helped him in the past.

(AT 979.)

### iii. Condition Can Be Controlled With Medication

Moreover, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

Here, the ALJ noted that "the medical records reveal that the medications have been relatively effective in controlling [plaintiff's] symptoms." (AT 21.) This conclusion is supported by the record. As explained above, there is evidence in the record to suggest that plaintiff has received relief from facet blocks and pain medication. (See AT 1000, 1007, 1015, 1019, 1145, 1238, 1250.) What is more, the objective evidence in the record shows that plaintiff's lumbar spine findings have either remained unchanged or only mildly worsened from 2009 through 2013. (See AT 1245.)

### iv. Effect of Improper Reason

Plaintiff also argues that the ALJ relied on an improper reason to discount plaintiff's credibility. (ECF No. 12 at 21.) Specifically, plaintiff asserts that it was improper for the ALJ to base her findings on the fact that "the treatment notes do not show that [plaintiff] can walk only 50 feet with a cane, and an inability to stand in the shower or balance." (AT 21.)

In any event, even if this were not a legitimate reason to discount plaintiff's testimony, the error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

Therefore, the ALJ did not err when she discounted plaintiff's credibility regarding the severity of his limitations because she provided several specific, clear, and convincing reasons for doing so, which are supported by the record.

11

3. *Whether the ALJ's RFC determination was without substantial evidence support*

Plaintiff alleges that the ALJ erred when making her RFC determination because she failed to consider plaintiff's subjective complaints of medication side effects, and because she relied on Dr. Wolfson's report but did not fully incorporate his findings into the RFC. (ECF No. 12 at 24–25.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). ALJ's are not required to adopt all of a single physician's findings when making an RFC determination.

Here the ALJ did not rely solely on Dr. Wolf's report. Rather, she came to her RFC determination "[a]fter careful consideration of the entire record." (AT 19.) Moreover, for the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken.

4. *Whether the ALJ committed reversible legal error at step five*

At step five, relying on testimony from the vocational expert ("VE"), the ALJ determined that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AT 24.) Specifically, the ALJ concluded that plaintiff

> would be able to perform the requirements of representative occupations such as Cashier, parking lot (DOT code 211.462-018) ...; Cashier, self-service (DOT code 211.462-010) ...; [and] Investigator, dealer accounts (DOT code 241.367-038).

(Id.)

Plaintiff asserts that this is reversible legal error because each of these named occupations requires a capacity for Level 3 Reasoning or above in the Dictionary of Occupational Titles ("DOT"), but the ALJ's RFC determination limits plaintiff to "simple, repetitive tasks," which

12

would preclude him from occupations that require such reasoning capacity. (ECF No. 12 at 14–16 (citing Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015).)

Even assuming that the ALJ erred, her error is not reversible because it is harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

During the hearing, the VE used these specific representative occupations as examples of jobs that plaintiff could perform. Importantly, however, the VE explicitly testified that a hypothetical person of plaintiff's age, education, work background, and RFC would be able to do jobs that classify as unskilled light duty, which is "40% of the light duty jobs" within the DOT grids. (AT 55–56.)

The "grids" take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. Id. "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks omitted). In such instances, the testimony of a vocational expert is required. Id.

Here, the VE's testimony that plaintiff could perform 40% of the light duty jobs means that the ALJ could conclude, without further comment from the VE, that plaintiff's limitations still allow him to perform 40% of the light duty jobs, as well as, at least 40% of the sedentary jobs within the grids. See 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). Thus, even if the ALJ erred when naming specific examples of "representative occupations" that plaintiff could perform, her conclusion that plaintiff could make a "successful adjustment to other work that exists in significant numbers in the national economy" is supported by substantial evidence because the VE testified that plaintiff can perform 40% of the light duty jobs in the grids. (AT 24, 56.)

5. *Whether this case should be remanded for an award of benefits*

For the reasons explained above, there are no grounds to remand this case because the ALJ has not committed any reversible error. Throughout his briefing, plaintiff also raises several other arguments, which are ultimately unpersuasive.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court is ordered to close this case.

IT IS SO ORDERED.

Dated: August 18, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ss.16-931.freeman.order re MSJ